### EDELEN's Lessee *vs.* SMOOT.—June, 1828.

Where a testator devised as follows: "*Item.* I give to my beloved wife E, a
tract of land purchased of S, whereon I now live, during her natural life;
and after her decease to my son R, to him and his heirs forever. *Item.* I
give to my sons J and B all that tract or parcel of land being part of C
H, to be equally divided between the above mentioned J and B; and my
son J to have his first choice of the above mentioned land. *Item.* I also
give to my two sons J and B a small tract of land lying on," &c. "called
H, containing 70 acres, to them and their heirs forever. In case either
of my sons dieth before they come of age, then their part or parts of
land, to be equally divided between the other two above mentioned bro-
thers, or to the survivor of the above mentioned J, R and B—*Held*, that
J took only an estate for life in the tract called C H.

APPEAL from *Charles* County Court.    Ejectment for a tract of land called *Calvert's Hope*, containing 1000 acres.    The defendant, (the appellee,) took defence on warrant, and plots were returned.    The general issue was pleaded.

1. At the trial the plaintiff offered in evidence the patent of *Calvert's Hope*, dated the 1st of April 1707, reciting that *James Bouling*, deceased, was in his lifetime seized in fee simple of and in a tract of land called *Calvert's Hope*, originally laid out for 898 acres, which was granted to him on the 10th of June, in the 30th year of the dominion of *Cœcilius*, late proprietary of the province; and that *Bouling* had by his will devised the same to his wife, *Mary*, in tail, who had since intermarried with *Benjamin Hall*, who, together with the said *Mary*, had obtained a special warrant to resurvey the said tract, in order to discover the quantity of surplus thereto belonging; that upon the return of a certificate of such resurvey, it appeared that there was the quantity of 303 acres of surplus land within the bounds of the said tract, for which the said *Benjamin* and *Mary* had secured to be paid, &c.    There was therefore granted to the said *Benjamin* and *Mary* the original quantity, under the same limitations of estate as is expressed in the will of *Bouling*, as also the quantity of 300 acres of surplus land, unto them and their heirs forever, &c.    He also read in evidence a deed from *Francis Hall*, the heir of *Benjamin* and *Mary Hall*, to *John Parnham*, dated the 24th of June 1736, for a part of the tract of land called *Calvert's Hope*, described by courses and distances, and containing 472 acres.    He also read in evidence a deed from the said *Francis Hall* to *John B. Boarman*, dated the 24th of June 1736, for "all those tracts or parcels of land, one part being part of *Calvert's Hope*, the other *Boarman's Rest*, and the third *The Indian Fields*—the three tracts or parcels of land lie now undivided or in one tract, on the east side of *Zachiah Swamp*, beginning," &c. containing 590 acres.    He then read in evidence the will of *John B. Boarman*, dated the 25th of April 1747, to show a devise of part of *Calvert Hope* to *Joseph Boarman* and *Raphael Boarman*. In the said will, among others, are the following devises: "*Item*. I give and bequeath to my beloved wife *Elizabeth Boarman*,

a tract of land purchased of *Charles Smoot,* whereon I now live, during her natural life; and after her decease to my son *Richard Boarman,* to him and his heirs forever. *Item.* I give and bequeath to my sons *Joseph* and *Raphael Boarman,* all that tract or parcel of land being part of *Calvert's Hope,* to be equally divided between the above mentioned *Joseph* and *Raphael;* and my son *Joseph* to have his first choice of the above mentioned land. *Item.* I also give and bequeath to my two sons *Joseph* and *Raphael Boarman,* a small tract of land lying on *Zachiah Swamp,* near the old bridges, called *Hazard,* containing seventy acres, to them and their heirs forever. In case either of my sons dieth before they come of age, then their part or parts of land to be equally divided between the other two above mentioned brothers, or to the survivor of the above mentioned *Joseph, Raphael* and *Richard. Item.* I give and bequeath to my daughter *Henrietta Thompson,* part of a tract of land called *Simpson's Supply,* one hundred and fifty acres, provided she makes my son *Joseph Boarman* satisfaction for fifty acres of the land." He then bequeathed to his wife sundry negroes, one of them a woman, during her natural life, then her and her increase to return to his three sons, *Joseph, Raphael* and *Richard.* He then bequeathed to his said three sons sundry negroes, to be equally divided, them, and their increase, between his said three sons at their arrival to the age of 18 years; and if either of them should die before that age, then the survivor or survivors to receive the part or parts of the deceased. The plaintiff then gave in evidence a deed from *Joseph Boarman* to *John H. Boarman,* dated the 1st of January 1759, whereby, in consideration of natural love and affection, and of five shillings, the said *Joseph* conveyed to the said *John H.* part of a tract of land willed to the said *Joseph* by his father, called *Calvert's Hope,* beginning, &c. and containing 200 acres more or less. He also gave in evidence the will of *John H. Boarman,* devising the said land to *George W. Boarman,* dated the first of January 1804, viz. "*Item.* I give and bequeath to my son *George W. Boarman,* that part of *Calvert's Hope* deeded to me by my uncle *Joseph Boarman,* excepting part of the said tract of land deeded by me to my brother *Raphael Boarman,* to him, his heirs and assigns,

forever." He also gave in evidence a deed for the same land from *George W. Boarman* to *Alexius Edelen*, the lessor of the plaintiff, dated the 9th of November 1820, containing 200 acres more or less. The defendant then prayed the court to instruct the jury, that *Joseph Boarman* and *Raphael Boarman* did not take a fee simple estate, but only a life-estate, in the devise to them of part of *Calvert's Hope* by the will of *John B. Boarman* herein before inserted. Which opinion and instruction the Court, [*Stephen*, Ch. J. and *Key* and *Plater*, A. J.] gave to the jury. The plaintiff excepted.

2. The plaintiff then read in evidence the plots and explanations filed in this cause; and then offered to give in evidence that he had been in possession of the land, lying to the south of the fence, located on the plots from little black *g*, to little black *b*. To the admissibility of which evidence the defendant objected, as the plaintiff had not located such possession on the plots. But the court overruled the objection, and permitted the evidence to go to the jury. The defendant excepted. The verdict and judgment being against the plaintiff, he appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, ARCHER, and DORSEY, J.

*Stonestreet*, and *Ashton*, for the Appellant, contended, that the court below erred in directing the jury that by the will of *John B. Boarman*, the persons under whom the lessor of the plaintiff claims, took only a life-estate in the lands in question. They cited *Frogmorton v Holyday*, 3 *Burr.* 1625.

*C. Dorsey*, for the Appellee, cited *Right v Compton*, 9 *East*, 273.

ARCHER, J. delivered the opinion of the court. The court are called upon to determine what estate *Joseph Boarman* took under the will of his father *John B. Boarman*, in that part of the tract of land called *Calvert's Hope* devised to him.

The clauses of the will, having reference in any way to this particular devise, are in the following words: "*Item.* I give and bequeath to my beloved wife *Elizabeth Boarman*, a tract

of land purchased of *Charles Smoot*, whereon I now live, during her natural life, and after her decease to her son *Richard Boarman, to him and his heirs forever.* Item. 1 give and bequeath to my sons *Joseph* and *Raphael*, all that tract or parcel of land being part of *Calvert's Hope*, to be equally divided between the above named *Joseph* and *Raphael*; and my son *Joseph* to have his first choice of the above mentioned land. *Item.* I also give and bequeath to my two sons *Joseph* and *Raphael*, a small tract of land lying in *Zachiah Swamp*, near the Old Bridges, called *Hazzard*, containing seventy-one acres, to them and their heirs forever. In case either of my sons dieth before they come of age, then their part or parts of land to be equally divided between the other two above mentioned brothers, or to the survivor of the above named *Joseph*, *Raphael* and *Richard*."

Were it not for the last clause which devises *Joseph's* part over to his surviving brothers on the contingency of his dying before he arrive to the age of twenty-one, the case would be indisputably clear. In the clause containing the devise to *Joseph*, no words of limitation are added; and that, and the subsequent clause, being entirely distinct, the words of limitation which it contains, cannot have reference to, or attach themselves to the previous clause. In *Gilbert on Devises*, 21, it is said, "if a man devises *Blackacre* to his son; *Item*, he gives *Whiteacre* to his said son and his heirs—the son hath but a life-estate in *Blackacre*, because there are two distinct devises. But if he had devised *Blackacre*, and *also Whiteacre*, to his son and his heirs, the son would have had a fee in both." And the reason assigned is, that it is one entire devise, and the word *heir* has relation to the whole sentence. The word *Item* is used to mark and distinguish the different clauses in a will, and they are so distinguished and separated here; and this will, standing on those two clauses alone, comes precisely within the scope of the authority cited, and would be clearly a life-estate. But the doubt arises upon the last clause, "and in case either of my sons die before they come of age, then their part or parts of land to be equally divided between the other two above mentioned brothers, or to the survivor of the above mentioned *Joseph*, *Raphael* and *Richard*," which, it is urged, is evin-

cive of the testator's intention to pass to *Joseph* an estate in
fee in the first devise to him, and that consequently it has the
effect of defining and enlarging the estate which would other-
wise have been transmitted.     The case of *Frogmorton v Holy-
day*, 3 *Burr*. 1618, is relied upon to establish this position.
That case contained a clause similar to the clauses under con-
sideration, and it was adjudged to pass a fee; but it must be re-
membered that there were other clauses which had a material
bearing in the decision of that case, *from all of which, taken
together*, it was adjudged to be the intention of the testator to
pass a fee, as the general clause manifesting a disposition to dis-
pose of all the testator's wordly affairs and estates, and a charge
of fifty pounds to be paid out of the rents and profits of the
estate; which, though in ordinary cases, could have no effect
in enlarging a devise without words of limitation to a fee, yet
in this case was considered, under its peculiar circumstances,
as having a tendency, combined with other clauses, to manifest
the intention to give a fee.     There was there also a sweeping
residuary clause, in which no mention was made of the real
estate.   Lord *Mansfield* grounded his opinion of the intention
to pass a fee from all the above clauses combined.     Mr. Justice
*Wilmot*, it is worthy of remark, however, relied solely on the
charge upon the annual rents and issues and profits of the estate,
upon the general clause manifesting a disposition to dispose of
all her estate, and on the residuary clause, and did not advert
to the devise over, if the devisee died in his minority, as hav-
ing the least effect upon his mind.

   But if any doubt could be entertained relative to the con-
struction of this will, those doubts are entirely dissipated by
an adjudication of this court directly in point, in *Owings v Rey-
nolds, et al. Lessee*, 3 *Harr. & Johns.* 141.   There *J. Owings*
devised as follows: "I give and bequeath to my wife my dwell-
ing plantation during her natural life, and after her decease to
fall to my son *Lot Owings;* and if he should die under age, it
is my will the said land should fall to my son *Caleb Owings*,
and my daughter *A. Odell.*"   And it was determined that *Lot
Owings* took only a life-estate, and the limitation over, if *Lot
Owings* died in his minority, was determined to have no effect
in passing a fee; although there was in the will a general clause,

expressive of an intention to dispose of his whole estate, that being considered only as matter of form, and as not having much influence, and only in favour of the clear intention of the testator.

In this will now under our consideration, there are no clauses or words from which an intention can be elicited to pass a fee, nor are there any clauses, other than those which have been above stated, that can by possibility be considered as having the least bearing on the subject.

We are of opinion, therefore, that *Joseph Boarman* took only a life-estate in the tract of land called *Calvert's Hope.*

JUDGMENT AFFIRMED.